IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

AIRGAS WEST, INC.,                )    CIVIL NO. 12-00454 LEK-KSC
                                  )
          Plaintiff,              )
                                  )
     vs.                          )
                                  )
HAWAII TEAMSTERS AND ALLIED       )
WORKERS, LOCAL 996,               )
                                  )
          Defendant.              )
_____ )


**ORDER CONFIRMING IN PART AND**
**<u>REVERSING IN PART ARBITRATION AWARDS</u>**

          Before the Court in these matters are: (1) Petitioner
Airgas West, Inc.'s ("Airgas") Petition to Vacate Arbitration
Award ("Airgas Petition"), filed August 8, 2012 in CV 12-454;
(2) Airgas' Motion for Summary Judgment, filed December 14, 2012
in CV 12-454 ("Airgas Motion"); and (3) Hawaii Teamsters and
Allied Workers, Local 996's ("Teamsters" or "union") Complaint to
Confirm Arbitration Award, filed September 17, 2012 in CV 12-517
("Teamsters Motion").  Teamsters filed a memorandum in opposition
to the Airgas Motion on January 24, 2013, and Airgas filed a
reply on February 13, 2013.  Teamsters filed a memorandum in
support of its motion on January 16, 2013.  Airgas filed a
memorandum in opposition to the Teamsters Motion on February 5,
2013, and Teamsters filed a reply on February 10, 2013.  These
matters came on for hearing on February 25, 2013.  Appearing on
behalf of Airgas were Ernest C. Moore, III, Esq., and Thomas J.

Kennedy, Esq.   Appearing on behalf of Teamsters was Sean Kim, Esq.   On April 1, 2013, the Court granted Airgas' request to file supplemental authorities, and on April 11, 2013, the Court granted Airgas' Motion to Stay Enforcement until after a final appealable order or judgment is entered by the Court.

The motions address the Arbitrator's Findings, Decision and Award dated June 21, 2012 ("Award"), and the Arbitrator's Supplementary Findings and Decision, dated July 10, 2012. ("Supplementary Award").[1]   After careful consideration of the motions, supporting and opposing memoranda, and the relevant legal authority, the Arbitration Award and Supplementary Award are CONFIRMED IN PART and REVERSED IN PART as follows:   The Airgas Petition and Airgas Motion are GRANTED IN PART AND DENIED IN PART.   They are DENIED with respect to Airgas' request to vacate the Award in its entirety, and GRANTED with respect to the Supplementary Award on the issue of grievant's entitlement to back pay for the entire period.   The Teamsters Motion is GRANTED in that the Court confirms the arbitration award to the extent it granted the grievance, but does not confirm the Award or Supplementary Award in their entirety.

---

[1] The Award is attached as Exhibit 2 to the Airgas Petition, and as Exhibit 2 to the Teamsters Motion.   The Supplemental Award is attached as Exhibit 5 to the Airgas Petition and as Exhibit 3 to the Teamsters Motion.

## BACKGROUND

Airgas and the union are parties to a collective
bargaining agreement ("CBA"), and the arbitration awards were
rendered pursuant to the grievance and arbitration provision of
the CBA.[2]  The following facts are not disputed and are drawn
from the Award.  On April 23, 2012, the parties participated in
an arbitration regarding the termination of Teamsters member
Gordon Oamilda.  Airgas terminated Mr. Oamilda on August 19, 2011
for violation of its sexual harassment policy.  Mr. Oamilda's co-
worker, Gena Fretty, filed an internal sexual harassment
complaint following a telephone conversation she had with Mr.
Oamilda on August 1, 2011.  Ms. Fretty worked as a customer
service representative.  Mr. Oamilda called the Kapolei Customer
Service Desk from his duty station at the Will Call Dock.  When
Ms. Fretty answered the line, Mr. Oamilda asked to speak to her
co-worker, Tammy Bradshaw.  The Arbitrator set forth the entirety
of the conversation, as reported by Ms. Fretty, as follows:

Gena:     [Gordon], how was your weekend?

Gordon:   Good.  How was your weekend?

Gena:     Hanging, tired because I went holoholo
          Kona this weekend.

Gordon:   Whoa, you went aloha Kona?

Gena:     No, I went holoholo in Kona.

---

[2] The CBA is attached as as Exhibit 1 to the Airgas
Petition, and as Exhibit 1 to the Teamsters Motion.

> Gordon:   I know all the guys you went aloha must
>           be all happy.  Sharing your manapua with
>           every one.  Hahaha.
>
> Gena:     No, Gordon, I went with my boyfriend to
>           drop off his son.
>
> Gordon:   Oh, your boyfriend, huh. . . .  Let me
>           talk to Tammy.

[Award at 3.]  Ms. Fretty understood Mr. Oamilda's remarks, in
this context, to mean that she had indiscriminate sexual
relations, and filed an internal complaint.

Peggy Grzywacz, Director of Human Resources, conducted
an investigation into Ms. Fretty's complaint.  Ms. Grzywacz is
based on the mainland and was not familiar with the alleged local
slang meanings of "holoholo," "aloha," and "manapua," which
Ms. Fretty found offensive in this context.  Ms. Grzywacz
interviewed Ms. Fretty's supervisor, Ms. Vivian Lima, who told
her that she believed the comments were sexual in nature, and
that "manapua" can refer to female genitalia and that "aloha"
could mean "sleeping around."  Mr. Oamilda denied that the words
had such meaning.  Ms. Lima reported to Ms. Grzywacz that, "he's
full of it," and that Mr. Oamilda "said things to lots of people
because he's in the Union and feels he is untouchable."  [Id. at
8.]  At the hearing, Ms. Grzywacz testified that another employee
confirmed the sexual meaning of these terms.

Ms. Grzywacz conferred with senior management and legal
counsel and determined that termination was the appropriate

penalty.  Airgas company policy bans "[v]erbal conduct such as making or using derogatory comments, epithets, slurs, sexually explicit jokes, or comments about any individual's body or dress." [<u>Id.</u> at 7.]  Company policy provides that "appropriate disciplinary action, up to and including discharge, will be taken," commensurate with the severity of the offense.  [<u>Id.</u>] Teamsters filed a grievance on behalf of Mr. Oamilda, alleging violations of the CBA and seeking reinstatement.

         At the arbitration, the issue was whether Mr. Oamilda was terminated for "just cause."  The Arbitrator determined that the interpretation of the remarks made by Mr. Oamilda to Ms. Fretty was in dispute.  [<u>Id.</u> at 2, 9.]  He noted that, while Ms. Fretty and some of her co-workers acknowledge that the words "aloha," "manapua," and "holoholo" are common in Hawai'i, they contend that they have indecent meanings as well.  The Arbitrator stated that he has lived in Honolulu for over 50 years, but is not familiar with these indecent interpretations.  [<u>Id.</u> at 10.] To determine whether these words had sexual meanings in slang usage, he researched the terms in statutes, articles, and conducted online searches ("googled").  Notably, he also asked his adult daughters about the purported meanings and "inquired of other long time Hawaii residents, ladies (and one gentleman) as to this 'Hawaiian common slang'," but none of them was familiar with an alternative meaning.  [<u>Id.</u> at 10-11.]

The Arbitrator called into question Ms. Fretty's credibility and motivation, noting that she previously had a "bad misunderstanding in 2005," involving Mr. Oamilda, and that the two employees had not spoken for several years following that incident.  [Id. at 11.]  The Arbitrator stated that he was "not willing to attribute [Ms. Fretty's] meanings and inferences to [Mr. Oamilda] or that the 'obscene' meanings and definitions could be attributed to him when he used the Hawaiian words Aloha, manapua, holoholo, etc." [Id. at 12.]  He ruled that, "[u]nder the circumstances and facts of this case, he is compelled to conclude that Employer has not met its burden of proof to establish sexual harassment, indeed not to the extent so to justify discharge of a long term employee[.]" [Id. at 13.]

The Award granted the grievance and stated that Mr. Oamilda was to be "reinstated with full pay, allowances and seniority." [Id. at 14.]

On June 27, 2012, Airgas filed a Motion to Clarify the Award on the issue of "full pay." It argued that "full pay" and "back pay" are mutually exclusive and the Award did not include a grant of back pay.  It also argued that Mr. Oamilda failed to mitigate his damages and did not seek to obtain any employment upon his discharge.  Further, Mr. Oamilda conceded that he had no medical records to support his claim that he was too depressed to seek employment.  The union argued that the Arbitrator did not

retain jurisdiction to explain or clarify the Award with respect to "full pay."

In the Supplementary Award, the Arbitrator ruled that Mr. Oamilda is "entitled to be 'made whole', that is reinstated with full back pay, allowances, seniority, including all contractual benefits (excluding overtime he would have received had he not been taken off the payroll." [Suppl. Award at 2.] He also ruled that, while Mr. Oamilda introduced no medical evidence to support his claim that he was too depressed to seek employment, Airgas failed to "counter [Mr. Oamilda's] explanation as to why he did not attempt to 'mitigate' his loss," and that "the defense of mitigation must fail." [Id. at 4.] The Arbitrator thereby affirmed the Award as clarified. [Id. at 5.]

I.  **Airgas Petition and Motion**

Airgas seeks summary judgment to vacate the Award and Supplementary Award on the grounds that the Arbitrator: (1) committed procedural misbehavior within the meaning of the Federal Arbitration Act, 9 U.S.C. § 10(a)(3) ("FAA"), by questioning his daughters and other unidentified individuals about the meaning of key critical terms in the arbitration post-hearing, following the closing of the record, and outside the presence of the parties; and (2) violated due process when he ruled that Mr. Oamilda was entitled to back pay and ruled that Airgas had the burden to prove failure to mitigate.  [Mem. in

Supp. of Airgas Mot. at 12-13, 17-19.]  It asks the Court to

vacate the awards.  [Id. at 34.]

Airgas argues that the Arbitrator did not properly

interpret the CBA because the Award incorporates evidence outside

of and beyond the record.  Section 17.13 of the CBA states:

> The complainant in every hearing before the
> arbitrator shall present a prima facie case.  In
> general, judicial rules of procedure shall be
> followed in every hearing, but the arbitrator need
> not follow the technical rules of evidence
> prevailing in a court of law or equity.  The
> arbitrator shall make his decision in the light of
> the whole record and shall decide the case upon
> the weight of all substantial evidence presented.

[Id. at 8-9 (quoting CBA).]

Airgas argues that it could not confront these

witnesses, question them, or submit arguments to the Arbitrator

on the probative value of such evidence.  Airgas maintains that

the evidence obtained in ex parte conversations with the

Arbitrator's daughters "is particularly significant and

influential because of the understandable tendency of a father to

value highly and share an affinity for solicited statements of

his own daughters."  [Id. at 12-13.]  It also faults the

Arbitrator for engaging in an independent investigation by

"googling" the meaning of "manapua" and "aloha," outside of the

record.  [Id. at 13.]

With respect to Mr. Oamilda's failure to mitigate his

damages, Airgas argues that the Arbitrator refused to acknowledge

that Airgas stated at the outset of its briefing that no remedy was appropriate in this proceeding.  It argues that Mr. Oamilda failed to mitigate his damages in refusing to seek other employment, which would have mitigated the amount of back pay.  [Id. at 17-18.]  It contends that the naked claim of "depression" was unsubstantiated by the record.  Airgas notes that the issue of mitigation was raised during the proceedings, but that the Arbitrator incorrectly ruled that there was some "burden" on the part of the employer beyond highlighting the absence of proof for the union's claim.  [Id. at 18-19.]

A.   **Teamsters Memorandum in Opposition**

In its opposition, the union states that, while an arbitrator's ex parte communication may be grounds to vacate an award, the burden is on the moving party to demonstrate that it was prejudiced by the Arbitrator's action.  It argues that the Arbitrator's factual findings were independent of and not affected by any ex parte communications.  The Arbitrator found that the indecent meanings were not common knowledge to him, and the union argues that it was reasonable for the Arbitrator to credit Mr. Oamilda's testimony that he did not either.  [Mem. in Opp. to Airgas Mot. at 5-6, 8-10.]

With respect to the Supplementary Award, the union argues that there is no basis to review the decision because errors of fact or law are not grounds to overturn an arbitrator's

decision.  Teamsters argue that failure to mitigate is not a universal basis to deny back pay, and that the Arbitrator's clarification that "full pay" meant "full back pay" is entitled to deference.  [Id. at 13-15.]

### B.  Airgas Reply

In its reply, Airgas contends that the Arbitrator was not free to use "his personal knowledge" to act as a surrogate for the developed record, and that his personal knowledge is not "substantial evidence presented" or "the record within the meaning of Section 17.13" as set forth in the CBA.  [Reply to Airgas Mot. at 2-3.]

Airgas asserts that the Arbitrator did rely on his post-hearing investigation, which is explicitly set forth in the Award, and that the Court should not ignore this language.  [Id. at 10-15.]

## II.  Teamsters Motion

The union makes many of the same arguments in support of its Motion.  It argues that Airgas cannot show that it was prejudiced by the Arbitrator's misconduct.  It contends that the Arbitrator made a factual finding that Mr. Oamilda's termination was not reasonable even if the meanings were vulgar.  According to the union, the Arbitrator would have reached the same decision with or without the ex parte discussions and independent research.  [Mem. in Supp. of Teamsters Mot. at 7-8, 11-12.]

10

It also argues that the Arbitrator reasonably credited Mr. Oamilda's testimony that he was not aware of any obscene meanings because the Arbitrator himself was not aware of such meanings.  The union argues that the Arbitrator made a factual finding that Mr. Oamilda was ignorant of any "Hawaiian slang meaning" and that there are no grounds to vacate the Award based on such a factual resolution.  [Id. at 10.]

Teamsters state that the CBA does not prohibit the Arbitrator from using his own personal knowledge regarding what is or is not "common knowledge" of language in the jurisdiction. [Id. at 12.]

A.   **Airgas Memorandum in Opposition**

In its opposition, Airgas asserts that the Arbitrator is not authorized under the CBA to consider information that is not in the record, and may not use "personal knowledge" as a surrogate for the record developed.  It argues that such "personal knowledge" is not "substantial evidence presented" or "within the meaning of Section 17.13" as set forth in the CBA. Airgas asserts that the Arbitrator effectively altered or amended section 17.12 of the CBA by refusing to comply with section 17.13.  [Mem. in Opp. to Teamsters Mot. at 2-3.]

Airgas argues that United Food and Commercial Workers Union Local 1119 v. United Markets, Inc., 784 F.2d 1433 (9th Cir. 1986), and Pacific Motor Trucking Co. v. Automotive

11

<u>Machinists Union</u>, 702 F.2d 176 (9th Cir. 1983), support vacating an arbitration award that does not draw its essence from the labor agreement.  Airgas asserts that the Arbitrator disregarded sections 17.12 ad 17.13 of the CBA "in a misguided quest to do his own independent, extra-record investigation on an *ex parte* basis and then consider, discuss, and incorporate the results of this investigation in to his award."  [<u>Id.</u> at 5-6.]

It asserts that, unlike in <u>United States Life Insurance v. Superior National Life Insurance</u>, 591 F.3d 1167, 1173 (9th Cir. 2010), the parties here had no notice and opportunity to be heard regarding the Arbitrator's independent investigation. [<u>Id.</u>]  Airgas contends that it was prejudiced here because the Arbitrator did rely on his post-hearing investigation, which is set forth in the Award.  [<u>Id.</u> at 12.]

   B.   **Teamsters Reply**

In its reply, the union argues that there was "substantial evidence" to support the Arbitrator's decision, including that Mr. Oamilda denied knowing the alleged slang meanings of "manapua" and "aloha" or making the statements to Ms. Fretty in the context that she alleged.  It also argues that the Arbitrator used his own knowledge and Mr. Oamilda's testimony to judge the credibility of Airgas' witnesses.  [Reply to Teamsters Mot. at 2-4.]

## DISCUSSION

### I.   Standard of Review

This Court's review of the Award and Supplementary Award is limited.  "Plenary review of the merits of an arbitration award would undermine the federal policy of settling labor disputes by arbitration." McClatchy Newspapers v. Central Valley Typographical Union No. 46, 686 F.2d 731, 733 (9th Cir. 1982) (citing United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960)).  Nevertheless, a court may determine whether the parties "'agree(d) to give the arbitrator the power to make the award he made,' and whether the award drew its essence from the agreement submitted for arbitration." Id. (quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960) (alteration in original)).  See also Haw. Teamsters & Allied Workers Union, Local 996 v. United Parcel Serv., 241 F.3d 1177, 1180 (9th Cir. 2001) ("Our review of labor arbitration awards is, however, extremely deferential because courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." (internal citations and quotations omitted)).

> An arbitration award is entitled to great
> deference "[b]ecause the parties have contracted
> to have disputes settled by an arbitrator chosen
> by them rather than by a judge, [and] it is the
> arbitrator's view of the facts and of the meaning
> of the contract that they have agreed to accept."

United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 37-38, 108 S. Ct. 364, 98 L. Ed. 2d 286 (1987).

"As long as the award 'draws its essence' from the contract, meaning that on its face it is a plausible interpretation of the contract, then the courts must enforce it." Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Ariz., 84 F.3d 1186, 1190 (9th Cir. 1996). See also Sunshine Mining Co. v. United Steelworkers of Am., AFL-CIO, CLC, 823 F.2d 1289, 1293 (9th Cir. 1987).  In other words, this court's "task is to determine whether the arbitrator interpreted the collective bargaining agreement, not whether he did so correctly." Haw. Teamsters, 241 F.3d at 1178.  See also Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509, 121 S. Ct. 1724, 149 L. Ed. 2d 740 (2001) (per curiam) ("Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement. . . . [I]f an arbitrator is even arguably construing or applying the contract . . . the fact that a court is convinced he committed serious error does not suffice to overturn his decision." (internal quotations and citations omitted)).

The Ninth Circuit has recognized only three narrow exceptions to the general rule of deferring to an arbitrator's decision: 1) when the arbitrator's award does not draw its essence from the CBA; 2) when the arbitrator exceeds the boundaries of the issues submitted to him; and 3) when the award is contrary to public policy. United Food & Commercial Workers Int'l Union, Local 588 v. Foster Poultry Farms, 74 F.3d 169, 173 (9th Cir. 1995).

McCabe Hamilton & Renny Co., Ltd. v. Int'l Longshore & Warehouse Union, Local 142, AFL-CIO, 624 F. Supp. 2d 1236, 1243-44 (D. Hawai'i 2008).

With this framework in mind, the Court turns to its analysis of the Award and Supplementary Award.

## II.   **Analysis**

### A.   **Award**

The parties agree that an arbitrator's ex parte communication may be grounds to vacate an award, but dispute its effect in this instance.  "Ex parte evidence to an arbitration panel that disadvantages any of the parties in their rights to submit and rebut evidence violates the parties' rights and is grounds for vacation of an arbitration award."  Pac. Reins. Mgmt. Corp. v. Ohio Reins. Corp., 935 F.2d 1019, 1025 (9th Cir. 1991) (arbitration pursuant to FAA).

Airgas argues that its rights were prejudiced because it had no notice of the receipt or consideration of the post-hearing evidence solicited by the Arbitrator.  The Court agrees that it is procedurally questionable for an arbitrator to consult with family members or to conduct independent internet research in order to define the meaning of disputed words.  The Court, however, agrees with the union that the Arbitrator's ex parte investigation does not invalidate his finding here that Mr. Oamilda was not fired for "just cause," and finds that neither party was disadvantaged by the evidence acquired outside of the arbitration.

The Court is sympathetic to Airgas' argument that evidence obtained in ex parte conversations with the Arbitrator's daughters is particularly significant because of the understandable tendency of a father to value highly and share an affinity for solicited statements of his own daughters.  These communications, however, did not ultimately change the outcome. This is because the Arbitrator addressed whether Mr. Oamilda should have been terminated even if the obscene meanings were applied to the disputed terms.  The Award states:

> Assuming arguendo such "alternate" [obscene] meanings, the Arbitrator concurs with Arbitrator Franckiewicz in Mead Corp, 113 LA 1169, 1182, cited by Grievant in his Post Arbitration Brief:
>
> > It is true that the Employer has a duty to keep the workplace free of sexual harassment. This does not mean, however, that every employee who engages in any form of sexual harassment, no matter how minor, necessarily is to be discharged.  Tot the extent that S's conduct is characterized as sexual harassment, it seems to me that this behavior falls at the less sever end of the spectrum. <u>Without exception, all the behavior attributed to him was verbal, rather than involving unwelcomed touching.</u>  For the most part, his statements involved sexual innuendos and banter, rather than requests for sexual favors, . . . . (Emphasis added).

[Award at 12-13.]  That is, the Arbitrator found that, even if Airgas' position was fully credited, Mr. Oamilda still should not have been terminated.  He also concluded that there was "some issue as to Ms. Fretty's credibility and motivation."  [Id. at 11.]

The Court finds that there was "substantial evidence" to support the Arbitrator's decision, including his determinations of witness credibility.  To the extent Airgas argues that it was denied due process or that the Award otherwise violates the FAA or Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, the Airgas Motion is denied.  Given the Court's deferential review of labor arbitration awards, and because the Court concludes that the Award "draws its essence" from the CBA, the Court must enforce the Award.

**B.   <u>Supplementary Award</u>**

The Court next turns to whether Mr. Oamilda is entitled to "full back pay" for the time he was not employed.  The Arbitrator found that Mr. Oamilda, "discharged without due or proper cause, is entitled to be 'made whole', that is reinstated with full back pay, allowances, seniority, including all contractual benefits (excluding overtime) he would have received had he not been taken off the payroll."  [Suppl. Award at 2.]  He also concluded that Airgas failed to counter Mr. Oamilda's "explanation as to why he did not attempt to 'mitigate' his loss," and that "the defense of mitigation must fail."  [<u>Id.</u> at 4.]

Under the CBA, the "arbitrator shall make his decision in the light of the whole record and shall decide the case upon the weight of all substantial evidence presented."  [CBA

§ 17.13.]  It not disputed that Mr. Oamilda made no attempt to mitigate his damages.  At the hearing, Airgas adduced uncontroverted testimony from Mr. Oamilda that he had no documentation or evidence supporting his claim that he was unable to work during the pendency of the arbitration.  There was substantial evidence before the Arbitrator, based on the briefing and testimony below, that Mr. Oamilda did not seek to mitigate his damages, but the Supplementary Award stated that Airgas did not "counter or contradict Grievant's claim that due to [depression], he was unable to seek other employment."  [Suppl. Award at 3.]

        The Court concludes that the Arbitrator's decision to award "full back pay," under the circumstances, was not a plausible interpretation of the contract.  Sheet Metal Workers' Int'l Ass'n Local Union No. 359 v. Madison Indus., Inc. of Ariz., 84 F.3d 1186, 1190 (9th Cir. 1996) ("[T]he industrial common law-the practices of the industry and the shop-is equally a part of the collective bargaining agreement although not expressed in it." ) (citation omitted).  "It is within an arbitrator's authority to award back pay once he or she has concluded that an employer improperly laid off employees."  Id. at 1191.  The Arbitrator was presented with evidence that Mr. Oamilda did not seek employment following his termination because he was "depressed," and admittedly made no attempt to mitigate his

damages.   To the extent the Arbitrator ruled that Airgas had some additional "burden" to prove the defense of failure to mitigate, the Court finds that the Supplementary Award does not draw its essence from the CBA.   That is, the Arbitrator's refusal to consider the clear evidence of failure to mitigate and to then impose an additional evidentiary burden on Airgas is not a plausible interpretation of the CBA, which requires the Arbitrator to make his decision in light of the whole record and decide the case upon the weight of all substantial evidence presented.

Nor did the Supplementary Award address the generally well-settled principle that employees have a duty to mitigate damages.   The Court agrees that some reasonable effort to find other employment is necessary to support a claim for full back pay under arbitral precedent, common law, and other statutory sources of labor and employment law.   See, e.g., NLRB v. Mercy Peninsula Ambulance Serv., Inc., 589 F.2d 1014, 1017-1818 (9th Cir. 1979) (Under Section 10(c) of the NLRA, 29 U.S.C. s 160(c), "[m]itigation will result not only where the worker has taken in earnings from another source after discharge, but also for 'losses willfully incurred' such as when the discriminatee fails to secure comparable employment without excuse.   A discharged worker is not held to the highest standard of diligence in his or her efforts to secure comparable employment; 'reasonable'

exertions are sufficient.") (citation omitted); <u>In re P&O Ports Louisiana, Inc.</u>, 129 LA 1712, 1713 (2012) ("Whatever the theoretical underpinnings of the duty to mitigate, that duty exists in the world of labor-management arbitration, and its discharge requires that an effort be made to locate comparable work for which an aggrieved party is qualified by skill, training, experience, and physical ability.").

For these reasons, the Court HEREBY VACATES the Supplementary Award to the extent it held that Mr. Oamilda was entitled to "full back pay."  The Court does not rule further with respect to any other remedy awarded under either the Award or Supplementary Award.

### <u>CONCLUSION</u>

On the basis of the foregoing, the Arbitration Award is CONFIRMED and the Supplementary Award is VACATED IN PART.  The Airgas Petition and Airgas Motion are GRANTED IN PART AND DENIED IN PART.  They are DENIED with respect to Airgas' request to vacate the Award in its entirety, and GRANTED with respect to the Supplementary Award on the issue of grievant's entitlement to back pay for the entire period.  The Teamsters Motion is GRANTED in that the Court confirms the Arbitration Award to the extent it granted the grievance, but does not confirm the awards in their entirety.  The Clerk's Office is directed to terminate these cases.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 29, 2013.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**AIRGAS WEST, INC. V. HAWAII TEAMSTERS AND ALLIED WORKERS LOCAL 996; CIVIL NO. 12-00454 LEK-KSC; ORDER CONFIRMING IN PART AND REVERSING IN PART ARBITRATION AWARDS**